THE STATE *ex rel.* THE MERAMEC IRON COMPANY, *Plaintiff in Error*, v. GADDY *et al.*

Non-suit: PRACTICE IN SUPREME COURT. It is only where the action of the trial court is such as to preclude the plaintiff from a recovery that it is proper for him to take a voluntary nonsuit, and in no other case will the Supreme Court interfere with the action of the court below.

*Error to Texas Circuit Court.*—HON. V. B. HILL, Judge

AFFIRMED.

*Perry & Kelly* and *Smith & Krauthoff* for plaintiff in error.

The action of the circuit court in excluding from evidence the tax receipt and other testimony offered was such as to preclude a recovery by plaintiff. The action of the court cut the plaintiff's case up by the root, and the only thing left for it to do was to take a non-suit. *Yankee v. Thompson*, 51 Mo. 241; *Hageman v. Moreland*, 33 Mo. 86; *Koeger v. Hays*, 57 Mo. 87. The circuit court erred in overruling the motion to set aside the judgment of non-suit.

*L. F. Parker* for defendant in error.

The non-suit was voluntary, and plaintiff was not forced thereto by any ruling of the court. The court merely ruled that in one case there was no lien, and in the other the best evidence of the amount of ore made was not offered, and the plaintiff, with a witness on the stand who had the certificates of the weigher of the

amount of ore made in his pocket, refused to offer them, but apparently became displeased that he was not permitted to prove his case in his own way and in a pet took a non-suit. If this court will review the action of lower courts upon every question of evidence decided by them, without the whole case having been before them, there will be no end to the trifling and vexatious appeals that can be brought here. The plaintiff should have proved or offered to prove his whole case, and that by primary and not secondary evidence, when, if the ruling of the court was such that he could not recover, he might properly have taken a non-suit.

PHILIPS, C.—This is an action against the defendant Gaddy, sheriff of Phelps county, and the sureties on his official bond, to recover damages for an alleged wrongful seizure and sale of personal property under execution. The principal facts as disclosed by the record, are that on the 7th day of November, 1868, the relator as heirs of Thomas James, under the corporate name of the "Meramec Iron Works," leased to William James, for a period of fifteen years, commencing the 1st day of May, 1869, and ending the 1st day of May, 1884, certain lands in Phelps county, with all farming, wood and ore lands therewith connected. The consideration of which lease was expressed as follows: "In consideration of which lease the said William James covenants with the parties of the first part that he will pay all the state and county taxes which may be assessed on said demised premises during the continuance of said lease; that he will deliver at St. James one-eighth of the pig iron made at the said Meramec Iron Works, and one-eighth of all heavy castings, and one-eighth of light castings, over and above one hundred tons annually, which may be cast at said iron works, which said castings are to be considered as pig iron." Subsequently, on the 18th day of May, 1876, the said contract of lease was modified and altered in the following manner and extent as shown by the records of

said company: "Upon application of William James, lessee, and with the consent of this company as the grantee of the heirs of Thomas James, deceased, the contract of lease entered into between the said heirs and William James on November 7, 1868, is modified and altered with the consent of said James as evidenced by his signature and seal to these proceedings in the following particulars: 1st. The rental to be one-eighth of all metal run from ore obtained from the Meramec or St. James ore banks; one-sixteenth of all metal run from ore obtained from other sources. 2. That no more than five forges shall be run on an average.    *    *    3d. The lease, as modified, to commence on May 1, 1876, and to terminate May 1, 1878, when said original lease and all modifications thereof shall expire.

The above proceedings are agreed to by me, May 18, 1876.                    WILLIAM JAMES. [SEAL.]"

On the lands embraced within the demised premises, certain crops were grown by the lessee, which were seized by the said sheriff under writs of execution in favor of the creditors of the lessee. The relator, the lessor, notified the sheriff before and at the sale that he claimed a landlord's lien on this property. The sheriff, notwithstanding, proceeded with the sale, and the property was bought by various parties and carried away. This suit is brought by said lessor on the sheriff's bond for damages. On the trial, on the rejection by the court of certain evidence offered by the relator, he took a non-suit with leave, etc. His motion for a new trial being overruled he prosecutes this writ of error.

In the progress of the trial the plaintiff offered in evidence certain tax receipts, purporting to have been executed by the collector to relator, for taxes paid by him on this land for the year 1877, for the purpose of proving, so the bill of exceptions recites, that all state and county taxes for 1877, assessed upon said premises, had been paid by the relator, and not the lessee, and to prove further the amount of such taxes so paid. This

evidence was objected to by the defendants on the grounds (1) that said taxes constitute no part of the rental; (2) that the amount of said taxes were uncertain; and (3) that said James was not bound under his contract of lease with relator to pay said taxes. The court sustained the objection and excluded the receipts. The defendants contend that such taxes were never within the terms of the original contract, and if they were that part of the contract was modified and changed so as to omit the payment of taxes as a part consideration for the rent of the premises.

The relator having introduced one Smith as a witness, the bill of exceptions shows the following occurred: The relator asked the said witness, Smith, the following question:

Do you, as secretary of the relator, know the amount of the value of the iron due it by William James as rent in the year 1877, and if so state how much?

Answer. I do, from the books of the company. Thomas James weighed the iron and kept the weight book. This book I have not seen.

To the admission of this testimony and to the answering of the said question the defendants objected on the ground that the witness did not know and could not know, and upon the further ground that such fact could only be shown by the proper weight book kept by Thomas James. The court sustained said objections, and to the ruling of the court in sustaining the same and excluding said testimony, the plaintiff duly excepted.

The plaintiff then asked said witness the further question, to wit: Have you inspected the accounts between said lessor and lessee? The answer was: I have. The report of the weigher of the company, which I have here with me, are the only records kept by the company of the amount of iron manufactured by William James. The plaintiff then asked said witness the further question, to wit: From such inspection of the accounts between the company and William James, do you know the bal-

ance, if any, of the amount of iron due the company by William James for rent in 1877? To asking of which question the defendant objected upon the ground that the witness had not inspected the accounts of William James, and therefore did not bring himself within the rule so as to be allowed to speak of the general balance.

Which objections were by the court sustained, and to which ruling plaintiff duly excepted. The plaintiff thereupon took a non-suit, with leave to move to set the same aside.

It occurs to me, from this record, that the non-suit was not compulsory. It was voluntary and unnecessary. "It is only where the action of the court, on the trial, is such as to preclude the plaintiff from a recovery that it is proper to suffer a non-suit. In no other case will this court interfere, as has been decided again and again." *Hageman v. Moreland*, 33 Mo. 86. In *Layton et al. v. Riney et al.*, 33 Mo. 87, which was a proceeding to contest the validity of a will, the plaintiffs offered certain witnesses to testify to certain material facts touching the issue. On objection by defendants they were excluded on the ground of incompetency. Thereupon the plaintiffs took a non-suit. The court says: "The plaintiffs were under no necessity to take a non-suit, for the court had made no decision which necessarily precluded them from recovery. It is only where the ruling of the court is such as strikes at the root of the case, and precludes the plaintiff from a recovery that we will undertake to review the action of the court below after a voluntary non-suit. A contrary practice would encourage parties to appeal upon every trivial decision of the court, and thus keep the matter in controversy in endless litigation."

We cannot say, it is true, on which of the grounds specified the court placed its exclusion of the tax receipts; but admitting that the court excluded them on the ground, either that the payment of such taxes was not within the purview of the original contract of lease, or that by the modified and altered contract "the rental" was limited to

the ore to be delivered, the exclusion of this evidence would only have prevented a recovery for the item of taxes, whereas there remained other items, in respect to the amount of ore not delivered or accounted for, on which the plaintiff might have recovered a judgment.

In respect to the evidence offered through the witness Smith, there is nothing to show that this was the only source of evidence open and available to the plaintiff to establish the fact sought. On the contrary it was disclosed that there were other witnesses, as also book entries and accounts kept, from whom and by which the amount of such coal might very properly and easily have been shown and exhibited to the triers of the fact. In fact the witness Smith stated that he had with him on the witness stand "the reports of the weights of the company," and that it is "the only record kept by the company of the amount of iron manufactured by William James." The character of proof offered by relator was the result of the summing up of the book accounts of the company. This mode of proof, presumably, was adopted by relator as coming within the rule which admits such statement "where the evidence is the result of voluminous facts, or of the inspection of many books and papers, the examination of which could not conveniently take place in court." 1 Greenl. Ev., sec. 93.

Without, perhaps, having laid the proper foundation for such questions, upon their rejection the relator submitted to a voluntary non-suit. The evidence offered was, at best, but one method of getting before the jury the result of the accounts. It was based on the rule *ab inconvenienti*, addressed to the discretion, more or less, of the trial judge, intended merely to facilitate the trial by avoiding the delay consequent upon the examination of long and complicated accounts, and to avoid the confounding of the jury with their intricate details. Yet, without making it apparent that the number of books of account or the number of entries rendered such mode of ascertaining the result necessary as was proposed by the questions

asked, and without offering as a witness the party who kept the books and made the entries, or accounting for his absence, the relator, on the rejection of the witness Smith, abruptly took a non-suit. It would be difficult to present a case coming more fully within the mischief and vice in practice denounced by the court in the cases above cited.

The judgment of the circuit court should therefore be affirmed. All concur.