# WILLIAMS, Appellant, v. FINKS et al.

## Division Two, June 12, 1900.

1. **Voluntary Nonsuit:** APPEAL. There is no appeal from a voluntary nonsuit.

2. ———: WHAT IS. Plaintiff, as assignee of a bank, sued on a promissory note, belonging to the bank at the time of its assignment. The answers admitted the execution of the note and set up as a defense that the note had been altered by the assistant cashier of the bank erasing and obliterating therefrom the name of one of the defendants at the place where it had been signed on said note by him. At the trial plaintiff offered the note in evidence, which the court excluded, and thereupon plaintiff took a nonsuit, and, after proper motions, appealed to this court. *Held*, that, as the answers admitted the execution of the note, they obviated any necessity for reading it in evidence and hence the exclusion of the note from the jury did not preclude a recovery by plaintiff, and consequently his nonsuit was voluntary, and the appeal can not be maintained.

3. ———: CHANGE OF POSITION ON APPEAL. The character of a nonsuit is in no wise changed from a voluntary to an involuntary one, by the fact that counsel for defendants have assumed an entirely different position in the appellate court from that which they took at the trial.

Appeal from Chariton Circuit Court.—*Hon. W. W. Rucker,*
Judge.

AFFIRMED.

*Crawley & Son* for respondent Walton.

The exceedingly able and interesting brief filed here by appellant's counsel can not entice us away from the simple proposition that this appeal was taken from a voluntary nonsuit. · The sole reason assigned for taking said nonsuit is the refusal of the trial court to permit plaintiff to read in evidence to the jury the promissory note filed with plaintiff's

petition.    In order for the exclusion of said note from the evidence to have forced plaintiff to a nonsuit, the offer of said note must have been appropriate.to the issue, and necessary to plaintiff's recovery.    In point of fact, the offer of said note was neither appropriate nor necessary.    The answer of this respondent expressly admits the execution of the note, while the replication of plaintiff expressly admits the erasure of the name of one of the makers of said note.    Upon this state of the pleadings the sole issue for trial was whether said erasure was made under such circumstances as to constitute it a fraudulent alteration of the note by the bank, or whether it was merely an act of spoliation by a stranger.    Upon that issue, we respectfully submit, it was no more necessary for plaintiff to offer in evidence the note sued on, than it was necessary for him to offer the certificate of incorporation of the Bank of Salisbury, or the deed of assignment from said bank to the plaintiff.    Having thus needlessly invoked a ruling upon a matter already expressly admitted by the pleading of his adversary, plaintiff's disappointment at the result affords no cause for saddling the responsibility for his nonsuit upon the court.    This respondent was as firmly bound by the admissions of his answer after said note had been excluded from the evidence, as before.

*Charles C. Hammond,* and *A. W. Johnson,* with whom are *Kinley & Kinley* for appellant in reply.

In view of what appears in the record of this case, the position taken by counsel for respondent, Walton, is to us amazing.    Counsel for respondent stultify their action in the trial court, taking one position there and entirely changing front in this court, and if sustained by this court will in effect have completely misled and entrapped the court and counsel in the trial court.    To relieve the note sued on

from being held void because of the admitted alteration, plaintiff introduced Branham as a witness to explain the admitted erasure, whose testimony was directed to both court and jury—to the court, for the purpose of determining whether the explanation *prima facie* relieved the note from its discredited condition, and to the jury, when the evidence, including the note, was all in to determine under appropriate instructions whether the alteration was made by parties interested beneficially in the note.    At the conclusion of Branham's testimony, acting on the theory on which both sides were trying the case, plaintiff offered the note in evidence as the note of all the makers, and still trying the case on the same theory above named, the counsel for respondents made objection "to the reading of the instrument offered in evidence for the reason of the material alteration apparent on the face of the note in erasure of the name of Y. C. Blakey." From this it is clear that counsel claimed that Branham's explanation about the erasure, did not even *prima facie* relieve the note from the discredited position it was placed in by the pleadings, and the court sustained counsel for respondents in this position.    Another reason for the offer of said note lies in the fact that the answer of respondent, Walton, contains the following language:    "Wherefore by reason of said wrongful and fraudulent erasure and alteration of said note, this defendant denies that said note as originally executed and as described in plaintiff's petition ever passed to said plaintiff."    Of course if the alteration was done by some person beneficially interested in such note this allegation would be correct.    This was substantially a denial of execution of the note sued on, and after proving what we believe the evidence shows that the alteration was made by a third party without authority the next thing would be to offer the note with indorsements, etc., to show that plaintiff was the owner of such note.    We do not think

counsel for respondent should be allowed to say as they do in their brief, in face of the record in this case, that "the reasons urged for the rejection of said note may not have been the best reasons, or even good reasons, still the rejection of said note can not be said to have driven plaintiff to a nonsuit."

BURGESS, J.—This is an action by plaintiff, assignee of the Bank of Salisbury, against the defendants Finks, Walton and Blakey, upon a note for the sum of five thousand dollars, less credits, executed by defendants to one Joseph Allin on the 13th day of June, 1890, and by Allin assigned to said Bank of Salisbury.

The petition alleges: "That on the 13th day of June, 1890, defendants executed and delivered to one Joseph Allin their promissory note, herewith filed, by which they promised to pay to the order of said Joseph Allin, for value received, twelve months after date, the sum of five thousand dollars with interest thereon from date at the rate of ten per cent per annum, and if the interest be not paid annually, to become as principal and bear the same rate of interest. That on the 7th day of August, 1891, said Joseph Allin, for value, assigned said note, without recourse, by writing on the back thereof, to said Bank of Salisbury, which said note is now owned and held by plaintiff as assignee of said bank. That there was paid on said note interest as follows: July 7, 1892, four hundred and nine dollars and forty-nine cents; July 7, 1894, eight hundred and ninety-three dollars and forty-five cents, which payments are entered on the back of said note; that the balance of said note and the accrued interest thereon are due and unpaid. Wherefore plaintiff prays judgment for the amount of said note with the accrued interest thereon, computed with annual rests, and for costs of suit."

The defendants Walton and Blakey filed separate answers. Walton in his answer admits the incorporation of the Bank of Salisbury, and its assignment of all its assets to the plaintiff, Williams, for the benefit of its creditors. Admits that he, Walton, signed the note described in the petition, and that after its maturity said note was sold and transferred to said bank. The answer then alleges that "after the sale and delivery of said note to said bank, and before the execution of the deed of assignment by it to plaintiff, the control and keeping of said note was intrusted by said bank to said J. H. Finks and one P. B. Branham, and that while said note was so in the control, custody and keeping of said Finks and Branham, said Finks and Branham and said bank, by themselves and their agents, and without the knowledge, consent or authority of this defendant, and‘ in the absence of this defendant, wrongfully and fraudulently erased and obliterated the name of said Y. C. Blakey from said note at the place where said name was signed and written by said Blakey, thereby materially altering said note, and wholly changing its original character and legal effect. Wherefore by reason of said wrongful and fraudulent erasure and alteration of said note, this defendant denies that said note as originally executed and as described in the petition ever passed to said plaintiff, and denies that said plaintiff is entitled to recover thereon in the sum sued for or in any sum whatever as against this defendant, and having fully answered, this defendant asks to be discharged with costs."

Defendant Blakey by separate answer admits the incorporation of the Bank of Salisbury; the assignment of the bank to plaintiff; the execution of the note sued on, and the assignment thereof after maturity to said bank. The answer then alleges that he executed said note, of which said bank had full knowledge, as security of defendant Joseph H.

Finks, who, at that time and at all the times hereinafter mentioned, was the cashier of said Bank of Salisbury and a holder and owner of a majority of the stock therein; that the directors of said bank having of right, supervision, direction, management and control of the business of said bank for more than two years prior to the assignment thereof, failed, neglected and refused to exercise any supervision, management or control thereof, and assented, permitted, allowed and turned over to the said defendant J. H. Finks, the entire management and control of the affairs and business of said bank. And defendant further says that on March 30, 1894, desiring to be released as the surety of J. H. Finks on said note, he applied to him to take up and discharge said note or release him as the security thereon by the execution of a new note in lieu thereof; that in the month of October in said year, the defendant becoming more insistent, was informed by said J. H. Finks, cashier of said Bank of Salisbury, and having as such cashier in his custody and control the affairs and business of said bank, that the said note had been fully paid off and discharged, and defendant says that relying upon the truth of the statement made by said bank through and by its cashier as aforesaid, he was for a time lulled into security and for said reason no steps were taken by him to secure himself or to force the collection of said note against the principal thereon; that his suspicions were finally aroused that the statements so made to him as aforesaid by the said bank through its cashier as aforesaid, were false, and on the 5th day of February, 1895, fully persuaded and determined to serve written notice upon the Bank of Salisbury forthwith to commence suit on said note against the parties thereon and to immediately take steps to secure himself as surety on said note, if he should find his suspicions confirmed, again applied to the Bank of Salisbury to ascertain the status of said note

and whether in point of fact said note had been paid off and retired; that the said Bank of Salisbury, then and there by its assistant cashier, one P. B. Branham, informed defendant that said note had been fully paid off and then and there gave him a written certificate or statement signed by said cashier, that defendant's name was not on any note belonging to said bank either as principal or security, and that he was not indebted to the bank in any sum whatever, and at defendant's request said certificate or statement was signed by defendant T. H. Walton, president of said Bank of Salisbury. And defendant says that he relied upon said verbal and written statement of said bank, so made by its officers and managers as aforesaid, as he had a right to rely thereon, and was thereby misled, deceived and lulled into security and so prevented from taking the steps contemplated and determined upon as aforesaid. And defendant says that had he been truly advised by said bank as it was the duty of said bank by its officers and managers to advise him, he would have at once given written notice as aforesaid and taken all further and necessary steps to secure himself as the surety of J. H. Finks defendant. Defendant says that the said J. H. Finks is now insolvent but that at all the times hereinbefore mentioned and up to the assignment of said bank, the said J. H. Finks had ample and sufficient property, real and personal, to secure the payment of said note and to satisfy a judgment obtained thereon. And defendant says that by reason of the premises, aforesaid, and the false representations, acts and doings of the said Bank of Salisbury by its officers and agents as aforesaid, plaintiff is estopped from having and maintaining this suit against this defendant.

"And for further defense this defendant affirms that after the sale and delivery of said note to said bank, and before the execution of the deed of assignment to plaintiff, said bank at all times and continuously intrusted said note

to the control, keeping and custody of said J. H. Finks and
one P. B. Branham, and that whilst said note was so in the
control, keeping and custody of said Finks and Branham,
said bank, by themselves and their agents, wrongfully and
fraudulently and without the knowledge, consent or author-
ity of this defendant, erased and obliterated the name and
signature of this defendant from said note so as to materially
alter said note, and wholly change and destroy its original
character and legal effect as the note of this defendant.
Wherefore, and by reason of said wrongful erasure and
alteration of said note, this defendant denies that the note
specifically described in the petition ever passed to the plain-
tiff under said deed of assignment, and denies that plaintiff
is entitled to recover against this defendant the sum de-
manded or any other sum."

Plaintiff replied to the separate answer of defendant
Walton denying· each and every allegation therein contained,
except as specifically admitted therein.    It then admits that
after the transfer of the note in question to the bank, P. B.
Branham did draw lines with pen and ink over and across the
name of defendant Blakey, on said note; that said act of
Branham was without the knowledge, consent and authority
of the board of directors of said bank or any one authorized
to release said Blakey from liability on said note, either as
joint maker or as security for J. H. Finks and T. H. Walton,
who were his principals.

To the separate answer of the defendant Blakey, plain-
tiff made reply denying each and every allegation of new
matter contained therein not specifically admitted. The reply
then proceeds as follows:    "Plaintiff admits that defendant
Walton did give to said defendant Blakey a statement in
writing to the effect that said Blakey's name was not on any
note due or given to the Bank of Salisbury, and that said
Blakey was not indebted to said bank in any sum whatever,

or words to that effect, signed by himself and one P. B. Branham, but avers that such action on the part of said Walton and Branham in giving said defendant Blakey such statement was without the knowledge, authority or consent of the board of directors of said Bank of Salisbury, or any one else having any authority to release said Blakey from liability to said bank on the note sued on, and had no binding authority on said bank, or this plaintiff as assignee, and constitutes no defense in this action. Plaintiff admits that while the note described in the petition was in the custody and control of said Bank of Salisbury, one P. B. Branham did draw pen marks across and through the name of defendant Blakey on said note, but avers that such action on the part of said Branham was without the knowledge, authority or consent of the board of directors of said bank or any one else having any authority to release said Blakey from liability on said note, and had no binding force on said bank, and being wholly unauthorized constitutes no defense to this action."

Defendant Finks made default.

The facts briefly stated are that on the 13th day of June, 1890, the defendants Finks and Walton as principals, and Y. C. Blakey as surety, all of them then officers of the Bank of Salisbury, borrowed of one Joseph Allin $5,000 and thereafter Finks and Walton as agents of said bank purchased for it said note, which was assigned by Allin to said bank after maturity without recourse upon Allin. The note was carried by the bank for several years without renewal.

P. B. Branham was the book-keeper and assistant cashier of the bank. There was nothing in the rules or by-laws of the bank defining the duties of assistant cashier.

During the absence of the cashier Finks, and while the president Walton, and the assistant cashier Branham, were

in the bank, defendant Blakey went in and asked the assistant cashier if he Blakey owed the bank any money, to which he replied, he did not. Blakey then asked if his name was on any paper of the bank, and if it was not he wanted a certificate to that effect. The assistant cashier called the president of the bank, Maj. Walton, to the rear end of the bank, and told him that Blakey was inquiring about the Allin note and that he wanted a certificate that he was not on any paper of the bank, · to which Walton said: "He, Blakey, hasn't an earthly thing to do with the Allin note," and told Branham to give Blakey the certificate. Branham prepared the certificate, and signed it on the lower line, Walton took it and signed it on the upper line and handed it to defendant Blakey. Branham without any suggestion from any one, except as suggested by the giving of the certificate, went back in a few minutes and erased the name of defendant Blakey from the note, as he says to make it consistent with the certificate. He had no authority from the directors of the bank or the executive officers to make this erasure, and so far as the testimony shows the directors of the bank never knew of the erasure.

Under this state of facts, plaintiff, during the trial to the court and jury, offered in evidence the note sued upon, which upon objection by defendants was excluded, and not allowed to be read. Whereupon plaintiff excepted to the ruling of the court, took a nonsuit, and after unsuccessful motion to set the same aside and for a new trial appeals.

It is asserted by plaintiff that the court erred in refusing to permit him to read in evidence the note sued on, while upon the other hand it is argued that it was not necessary under the pleadings to a recovery upon the note that it should be read in evidence, and therefore plaintiff was not forced to take a nonsuit but did so voluntarily.

Nonsuits are of two kinds, voluntary and involuntary.

Williams' v. Finks.

A voluntary nonsuit is when the suit is terminated by the voluntary action and free will of the plaintiff, while an involuntary nonsuit is when the plaintiff by some adverse ruling of the court which precludes his recovery, is compelled to take a nonsuit. The answer of the defendants in this case admits the execution of the note, and it does not seem to us that it was necessary to a recovery upon it that it should have been read in evidence to the jury. The admission of the execution of the note obviated any necessity for reading it in evidence. It could have proven no more than was admitted by the answer, hence the nonsuit was voluntary. And it is only proper to take a nonsuit, where at the trial, the ruling of the court is such as to preclude plaintiff from recovery. In no other case will this court interfere. [Hageman v. Moreland, 33 Mo. 86; Layton v. Riney, 33 Mo. 87; Poe v. Dominic, 46 Mo. 118; State ex rel. v. Gaddy, 83 Mo. 138.]

It is however asserted, by plaintiff, that counsel, for defendants have assumed an entirely different position in this court from that which they took in the court below, and that they ought not to be permitted to do so; but however this may be, it does not in any manner change the character of the nonsuit, which was clearly, we think, voluntary.

The judgment is affirmed. *Gantt, P. J.*, and *Sherwood, J.*, concur.